**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiffs-Appellees,

v.

RUBEN ALMARAZ,

Defendant-Appellant.

No. 04-2227
(D.C. Nos. CIV-04-230-BB and
CR-98-976 BB)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-Appellant Ruben Almaraz appeals from the district court's denial of his 28 U.S.C. § 2255 habeas corpus petition. Mr. Almaraz alleged in his petition that he was denied effective assistance of counsel and that prosecutorial

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

misconduct denied him a fair trial. The district court denied his petition,

Mr. Almaraz appealed, and this court granted a certificate of appealability on the

two allegations of error raised on appeal: (1) that the district court erred in

finding that Mr. Almaraz had not "established a substantial claim of ineffective

assistance of counsel," and (2) that the district court erred in finding that he had

not "established a substantial claim of prosecutorial misconduct." We exercise

jurisdiction under 28 U.S.C. 2253(a) and affirm.

## BACKGROUND

Mr. Almaraz was convicted of, among other charges, engaging in a

continuing criminal enterprise in violation of 21 U.S.C. § 848. Under 21 U.S.C.

§ 848(c), a person is engaged in a "continuing criminal enterprise" (CCE) if:

> (1) he violates any provision of [the federal drug laws] the
> punishment for which is a felony, and
> (2) such violation is a part of a continuing series of violations of [the
> federal drug laws]–
> (A) which are undertaken by such person in concert with five or more
> other persons with respect to whom such person occupies a position
> of organizer, a supervisory position, or any other position of
> management, and
> (B) from which such person obtains substantial income or resources.

Mr. Almaraz's conviction arose out of his activities distributing cocaine in the

Las Cruces, New Mexico, area. The facts surrounding Mr. Almaraz's conviction

are summarized in this court's opinion on Mr. Almaraz's direct appeal and need

not be repeated in detail here. *See United States v. Almaraz* (*Almaraz I*), 306 F.3d

-2-

1031, 1033-34 (10th Cir. 2002). It is sufficient to say that Mr. Almaraz and his brother distributed cocaine through street-level dealers with their family restaurant serving as the focal point for the operation.

The main argument in Mr. Almaraz's § 2255 petition was that his trial counsel was ineffective because counsel failed to perform a sufficient pre-trial investigation, especially in regard to the issue of successive underlings, and that counsel failed to (1) argue that underlings who merely replaced previous underlings could not be counted as persons with whom he acted in concert under 21 U.S.C. § 848, and (2) request a jury instruction to that effect. Mr. Almaraz claimed his trial counsel should have presented evidence that he "was a struggling restaurant owner who foolishly succumbed to the temptation to engage in street-level drug sales with the help of a single associate." Aplt. App., Vol. III, at 713. The district court pointed to Mr. Almaraz's failure to present the names and affidavits of witnesses who would have supported this defense and found that he "[did] not state, with the specificity necessary to enable the court to determine this issue, what information his attorney was supposed to have come up with in pretrial investigation that would have affected the jury's consideration of this defense." *Id*. at 880.

Mr. Almaraz also claimed that (1) his trial counsel was ineffective for failing to object when the prosecution introduced inadmissible expert witness

-3-

testimony and hearsay testimony, and when the prosecution vouched for the credibility of government witnesses; and (2) that these actions by the prosecution amounted to misconduct and deprived Mr. Almaraz of due process.[1] The district court agreed with the magistrate judge's determination that the complained-of testimony was admissible and that the prosecution did not improperly vouch for witnesses. The court found that trial counsel had therefore not provided ineffective assistance in failing to object to such testimony or to the prosecution's allegedly improper comments regarding its witnesses. The district court found that the prosecution "did not engage in behavior or make remarks which fell outside the normal bounds of zealous advocacy and rendered the trial fundamentally unfair." *Id.* at 877. The district court adopted the findings and recommended disposition of the magistrate judge, denied the motion for evidentiary hearing, and dismissed the action with prejudice.

## ANALYSIS

"When reviewing a district court's denial of a § 2255 petition, we review questions of law de novo and questions of fact for clear error." *United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004). "Review in a section 2255 habeas action entails a two-step inquiry: (1) whether the defendant is entitled to relief if

___

[1] The district court also read Mr. Almaraz's complaint to raise other claims, but Mr. Almaraz does not challenge the district court's resolution of these claims on appeal.

his allegations are proved; and (2) whether the district court abused its discretion by refusing to grant an evidentiary hearing." *United States v. Whalen*, 976 F.2d 1346, 1348 (10th Cir. 1992). Under 28 U.S.C. § 2255, the district court is required to conduct an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Under these standards, and for the reasons set forth by the district court in its August 5, 2004, order, we affirm the district court's ruling that Mr. Almaraz's trial counsel was not ineffective for failing to object to the elicitation of the allegedly inadmissible evidence and improper vouching, and that such elicitation and vouching did not rise to the level of prosecutorial misconduct. No evidentiary hearing was required on these issues because Mr. Almaraz's complaints regard testimony and argument appearing in the record.

Mr. Almaraz's argument regarding replacement underlings deserves more discussion. Some evidence in the record suggests that at least one of Mr. Almaraz's dealers was "replaced" by others. In *Almaraz I*, we described Mr. Almaraz's organization as follows:

> Jesus Orozco, a friend of the Almaraz brothers, assisted in the cocaine distribution efforts. Janette Orozco is his wife. The parties dispute whether she was involved in the drug organization. When things got too hot for Jesus Orozco because he became concerned law enforcement officials were watching him, he was *replaced* as a street-level dealer by two brothers, Carlos and Antonio Lopez. Jesse Chavez arrived on the scene late in the game when Carlos Almaraz [Mr. Almaraz's brother] and Jesus Orozco gave a confidential

-5-

informant a pager number.  Jesse Chavez manned that pager, returned phone calls, and sold cocaine for the organization.

306 F.3d at 1033 (emphasis added).  Even if it could be said that the Lopez brothers were, in turn, "replaced" by Jesse Chavez, it would not be clear whether the "replaced" dealers actually left the organization or were simply replaced in regard to the drug deals at issue and still maintained other responsibilities.[2]  The district court was correct in finding that Mr. Almaraz made no specific factual allegations as to which street-level dealers were replacements, whether previous dealers left the organization, and who would testify regarding such matters.

Even if he had made such allegations, his counsel could not have been said to have been ineffective for failing to investigate and present the defense at issue.

> To prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that counsel's representation fell below an objective standard of reasonableness, and that the deficient performance prejudiced the defendant.  To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*United States v. Prows*, 118 F.3d 686, 691 (10th Cir. 1997) (internal quotation marks and citations omitted).

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and

---

[2]     For example, even after Jesus Orozco was "replaced" by the Lopez brothers, he was evidently involved with giving Jesse Chavez's pager number to a confidential informant.    *Almaraz I,*  306 F.3d at 1033.

strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

Here, it is clear that Mr. Almaraz had relationships with his brother and four street-level dealers. Mr. Almaraz mainly relies on *United States v. Bond*, 847 F.2d 1233 (7th Cir. 1988), to argue that replacement underlings cannot be counted. The appellant in *Bond* was the middleman in a marijuana ring. *Id*. at 1236. Although the appellant "[did] not deny working with or issuing orders to at least 20 participants in [the] criminal venture[, h]e claim[ed] . . . that these were casual laborers, that the indictment did not name them, and that the jury did not necessarily agree on which five he supervised." *Id*. at 1237. The *Bond* court held:

> [t]hat the participants in this venture were casual labor is irrelevant. The statute speaks of acting in concert with five persons; it does not say the same five continuously or specify that any of the five must be "important" to the syndicate.

*Id*. The circuit court also used the language seized upon by Mr. Almaraz, stating:

> Now the statute aims at criminal organizations. A small time dope dealer who keeps to himself and has a single mule to smuggle the drug into the country is outside the statute's scope. The dealer's need to replace his aide (because of arrests or the difficulty of getting

good help in the business) would not authorize a CCE prosecution on the theory that the small-timer had one servant in January, a second in February, a third in March, and so on. The organization would never be larger than two.

*Id.* The court finally found that:

the [defendant's] network was not a two-bit show, however; it dealt with tons of marijuana yearly and did cocaine business on the side. This network continuously had more than five employees. The question is whether [the defendant] acted in concert with five as manager or coordinator.

*Id.*; *see also United States v. Gibbs*, 61 F.3d 536, 539 (7th Cir. 1995) ("It is enough under *Bond* that the defendant at various times managed or supervised at least five other persons so long as it is clear that no one of the five merely replaced one of the others.").

The language in *Bond* relied upon by Mr. Almaraz does not represent the law in this circuit. This court has held that, "[t]he supervisory relationships [needed to support a CCE conviction] need not have existed at the same time or with each other, and the same type of relationship need not exist between the defendant and each of the five other persons involved." *Almaraz*, 306 F.3d at 1040 (internal quotation marks omitted); *see United States v. Apodaca*, 843 F.2d 421, 426 (10th Cir. 1988) ("The defendant's relationships with the other persons need not have existed at the same time, the five persons involved need not have acted in concert at the same time or with each other, and the same type of

relationship need not exist between the defendant and each of the five.").[3]

Mr. Almaraz was therefore not prejudiced when his trial counsel made the argument that no CCE existed because the street-level dealers were actually competitors who were not controlled by him, and not the inconsistent argument that no CCE existed because some of the dealers working for him were merely replacements. *See Bullock v. Carver*, 297 F.3d 1036, 1051 (10th Cir. 2002) ("As a general matter, we presume that an attorney performed in an objectively reasonable manner because his conduct *might* be considered part of a sound strategy.").

CONCLUSION

---

[3]     Further, in *United States v. Bafia*, 949 F.2d 1465 (7th Cir. 1991), the court found that *Bond* did not support that appellant's argument that "it [was] not sufficient to show that he supervised two or three people at one time, and then three or four different people at another time." *Id*. at 1470. The *Bafia* court found that *Bond* "dismissed as irrelevant the possibility that underlings came and went, in light of the defendant's role as manager and coordinator of a larger criminal organization." *Id*. at 1471. The court therefore affirmed the district court's refusal to instruct the jury that replacement underlings could not be counted. *Id*. at 1481 (Posner, J., concurring and dissenting). Therefore, the Seventh Circuit found *Bond* did not require the type of jury instruction Mr. Almaraz now claims his trial counsel should have requested.

For the reasons set forth above, the judgment of the district court is AFFIRMED.

Entered for the Court

Robert H. Henry
Circuit Judge